IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03093-REB-KLM

MERLE H. SCHONEBAUM, and
DENISE M. SCHONEBAUM,

      Plaintiffs,

v.

SHELLPOINT MORTGAGE SERVICING,
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and
BANK OF NEW YORK MELLON as Trustee for Countrywide ALT 2005-42CB Trust,

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)** [#18][1] (the "Motion").  Plaintiff, who is proceeding pro se,[2] filed a Response [#20] in opposition to the Motion, and Defendants filed a Reply [#22].  The Motion is thus ripe for review.  Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c)(3), the Motion is referred to the undersigned for recommendation

---

[1]  "[#18]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's electronic case filing and management system (CM/ECF).  This convention is used throughout the Recommendation.

[2]  The Court must construe liberally the filings of a pro se litigant.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

[#25].  Having reviewed the entire case file and being sufficiently advised, the Court **RECOMMENDS** that the Motion [#18] be **GRANTED.**

## I.  Summary of the Case

On July 8, 2005, Plaintiffs signed and executed a Promissory Note in the amount of $218,400 and a Deed of Trust securing the Promissory Note with property located at 16368 East Phillips Lane, Englewood, Colorado, 80112.  *Compl.* [#1] ¶ 10; *id.* [#1-2] at 38, 41-43. The Deed of Trust was then recorded in Arapahoe County on July 25, 2005.  *Id.* [#1-2] at 2.  The Deed of Trust named America's Wholesale Lender as the "Lender" and Defendant Mortgage Electronic Registration Systems, Inc. ("Defendant MERS") as the "nominee for Lender and Lender's successors and assigns"[3]  as well as the beneficiary.  *Id.*  Plaintiffs were listed as the "Borrower."  *Id.*  The Promissory Note was endorsed in blank.[4]  *Id.* [#1-2] at 43.  Under the terms of the Deed of Trust, Defendant MERS, as the nominee, was given explicit authority to act on behalf of America's Wholesale Lender, which included the right to sell the Promissory Note and the Deed of Trust.  *Id.* [#1-2] at 3, 10.

In March of 2012, Defendant MERS, acting as the nominee, assigned the Deed of Trust pursuant to an Assignment of Deed of Trust to Defendant Bank of New York Mellon as Trustee for Countrywide ALT 2005-42CB Trust ("Defendant BNYM").  *Compl.* [#1] ¶ 11; *id.* [#1-2] at 20.  The Assignment of Deed of Trust was then recorded in Arapahoe County on March 22, 2012.  *Compl.* [#1] ¶ 11.

---

[3]  A nominee is defined as "[a] person designated to act in place of another, usu. in a very limited way."  *Nominee*, BLACK'S LAW DICTIONARY (10th 2014).

[4]  A blank indorsement is defined as "[a]n indorsement that names no specific payee, thus making the instrument payable to the bearer and negotiable by delivery only."  *Indorsement*, BLACK'S LAW DICTIONARY (10th 2014) (citing U.C.C. §3-205(b) (Unif. Law Comm'n 1977)).

On May 7, 2012, Plaintiffs filed a joint petition for Chapter 7 bankruptcy with the United States Bankruptcy Court in the District of Colorado. *See Motion* [#18] at 3; *id.* [# 18-1].[5] Plaintiffs received a Chapter 7 discharge on August, 17, 2012. *Id.* [#18-3].

In early February of 2014, Plaintiffs received a letter from Defendant Shellpoint Mortgage Servicing ("Defendant Shellpoint"), dated February 14, 2014, stating that Resurgent Mortgage Servicing would become part of Defendant Shellpoint and that the servicing of Plaintiffs' loan would be transferred to Defendant Shellpoint beginning on March 1, 2014. *Compl.* [#1-2] at 57. On or about March 30, 2014, Plaintiffs received a letter, dated March 26, 2014, from Defendant Shellpoint stating that, on behalf of Defendant BNYM, Defendant Shellpoint was providing notice that Plaintiffs' loan was in default for failure to pay. *Compl.* [#1] ¶ 12; *id.* [#1-2] at 30.

In June of 2014, Plaintiffs received a "Securitization Analysis & County Records Report" ("Audit Report") from Holmes & Galt, LLC, which Plaintiffs allege put them on notice of alleged wrongdoings by all Defendants concerning Plaintiffs' loan. *Id.* [#1-1]; *id.* [#1-2] at 22-28; *Response* [#20] at 4. Plaintiffs claim that in response to the Audit Report and the notice of default letter dated March 26, 2014, Plaintiffs sent a Qualified Written Request ("QWR") to Defendant Shellpoint on August 1, 2014, asking for information

---

[5] The Court notes that both parties have submitted documents outside of the pleadings. *See Compl.* [#1-1]; *id.* [#1-2]; *Motion* [#18-1]; *id.* [#18-2]; *id.* [#18-3]. The Court may appropriately consider these documents on this Motion to Dismiss because: (1) the documents are pertinent to ruling on the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1), see *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000); (2) the documents are central to Plaintiffs' claims and Plaintiffs refer to them in their complaint, *see GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997); and (3) the documents are subject to judicial notice as court documents and matters of public record, *see Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).

regarding Plaintiffs' account.  *Compl.* [#1] ¶ 13; *id.* [#1-2] at 32-34; *Response* [#20] at 4.

On August 18, 2014, Plaintiffs received confirmation of receipt of the QWR from Defendant

Shellpoint.  *Compl.* [#1] ¶ 14; *id.* [#1-2] at 36.  Subsequently, on September 15, 2014,

Plaintiffs received Defendant Shellpoint's response to Plaintiffs' QWR, which included

copies of the Assignment of the Deed of Trust, the Promissory Note, the Deed of Trust,

Good Faith Estimate, Loan Application, Settlement Statement, Notice of Servicing Transfer,

Acquisition Letter, and a loan transaction history dating back to the origination of the loan.

*Id.* [#1-2] at 38-65.

Plaintiffs allege that the payment history provided by Defendant Shellpoint is a false

"off-balance sheet."  *Id.* [#1] ¶ 15.  Plaintiffs further allege that the chain of title regarding

the Promissory Note and Deed of Trust was broken because Defendant MERS had no

legal authority to transfer any interest in the loan to Defendant BNYM. *Id.* ¶¶ 23, 35, 50.

Plaintiffs contend that because Defendant MERS had no authority to transfer, none of the

Defendants have legal ownership of the loan.  *Id.* ¶ 41.  Plaintiffs assert that the "entire

enforcement and foreclosure" of the loan by Defendants was "improper, wrongful, illegal

and/or fraudulent."  *Id.* ¶ 45.

Thus, Plaintiffs assert several statutory and tort claims pursuant to federal and

Colorado law based on their allegations that Defendants engaged in a fraudulent mortgage

loan scheme.  *Id.* at 3.  Specifically, Plaintiffs bring the following claims for relief: (1)

violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et*

*seq.,* against Defendant Shellpoint; (2) violations of the Truth in Lending Act ("TILA"), 15

U.S.C. § 1601, *et seq.,* against Defendant Shellpoint; (3) violations of the Fair Credit

Reporting Act ("FCRA"), 15 U.S.C. § 1681, against Defendant Shellpoint; and, against all

Defendants, (4) intentional misrepresentation; (5) unjust enrichment; (6) civil conspiracy; and (7) wrongful foreclosure. *Compl.* [#1] at 12-18.  Plaintiffs seek  "cancellation of instruments," an order quieting title to the property, and money damages. *Id.* at 12-21.

In response, Defendants filed the instant Motion [#18] requesting that the Court dismiss Plaintiffs' complaint.  In the Motion, Defendants argue that Plaintiffs lack standing to bring these claims.  Defendants assert that these causes of action all accrued prior to Plaintiffs' filing for Chapter 7 bankruptcy and that Plaintiffs did not disclose these causes of actions in their petition for bankruptcy. *Motion* [#18] at 2-4, 6-7.  Defendants contend that, by failing to disclose causes of action that accrued prior to the filing for bankruptcy, Plaintiffs' unlisted claims became property of the bankruptcy estate, and hence only the trustee of the bankruptcy estate has standing to bring these claims.  In the alternative, Defendants argue that all of Plaintiffs' claims fail to state a claim upon which relief can be granted. *Id.* at 7-16.

## II.  Standard of Review

### A.    Federal Rule of Civil Procedure 12(b)(1)

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it.  Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction. *Montoya v. Chao,* 296 F.3d 952, 955 (10th Cir. 2002); Fed. R. Civ. P. 12(b)(1).  Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed. *F & S Const. Co. v. Jensen,* 337 F.2d 160, 161 (10th Cir. 1964).  "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: facial attack or factual attack. *Holt v. United States,* 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true. *Id.* By contrast, when reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003. With a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends. *Id.* The Court therefore must make its own findings of fact. *Id.* In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman,* 825 F.2d 257, 259 n.5 (10th Cir. 1987)). The Court's reliance on "evidence outside the pleadings" to make findings concerning purely jurisdictional facts does not convert a motion to dismiss pursuant to Rule 12(b)(1) into a motion for summary judgment pursuant to Rule 56. *Id.*

**B.    Federal Rule of Civil Procedure 12(b)(6)**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted"). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a

complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (brackets in original; internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n][ ]that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 552 U.S. at 679 (second brackets added; citation and internal quotation marks omitted).

### III.  Analysis

### A.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendants assert that Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(1) because Plaintiffs lack standing. *Motion* [#18] at 5. Defendants argue that

because the claims that Plaintiffs are asserting in this lawsuit took place prior to Plaintiffs' filing for Chapter 7 bankruptcy and Plaintiffs failed to list these claims when filing for bankruptcy, these claims are part of Plaintiffs' Chapter 7 bankruptcy estate and therefore only the trustee of the bankruptcy estate has standing to bring a lawsuit on these claims. *Id.* at 3, 5-7.

Pursuant to the United States Bankruptcy Code, a bankruptcy estate is created at the commencement of a case.  11 U.S.C. § 541(a).  Once the bankruptcy estate is established, the bankruptcy trustee becomes the representative of the estate and has the capacity to sue and be sued on behalf of the estate.  11 U.S.C. § 323.  Therefore, the trustee is "the only party with standing to prosecute causes of action belonging to the estate."  *In re Cook,* 520 Fed. App'x 697, 701-02 (10th Cir. 2013) (citing *Moses v. Howard Univ. Hosp.,* 606 F.3d 789. 795 (D.C. Cir. 2010); *see also Willess v. United States,* 560 Fed. App'x 762, 764 (10th Cir. 2014).[6]

At the commencement of a case, a debtor must disclose, among other things, a list of creditors, a schedule of assets and liabilities, and a schedule of current income and current expenditures.  11 U.S.C. § 521(a)(1).  Because the scope of the bankruptcy estate is "broad" and is comprised of property "wherever located and by whomever held," a debtor must also disclose "all legal claims and causes of action, pending or potential, which a debtor may have" at the time of filing.  11 U.S.C. § 541(a)(1); *In re Dittmar*, 618 F.3d 1199, 1207 (10th Cir. 2010); *Eastman v. Union Pac. R. Co.,* 493 F.3d 1151, 1159 (10th Cir. 2007)

---

[6] "The trustee takes subject to all valid claims, liens, and equities which might have been asserted against the bankrupt."  *W.F. Pigg & Son v. U.S. for Use of Leach*, 81 F.2d 334, 335 (10th Cir. 1936).

(citing *In re Coastal Plains, Inc.,* 179 F.3d 197, 208 (5th Cir. 1999) *cert. denied, sub nom.*

*Mims v. Browing Mfg.*, 528 U.S. 1117 (2000)); *United States v. Cardall*, 885 F. 2d 656, 678

(10th Cir. 1989) (quoting *In re DeWeese*, 47 B.R. 251, 254 (W. D. N. C. Bankr. 1985)).

If a debtor fails to disclose a legal claim or cause of action, "[t]he integrity of the

bankruptcy proceeding is compromised" because the bankruptcy court relies on the

information the debtor provides. *Autos, Inc. v. Gowin*, 244 Fed. App'x 885, 891 (10th Cir.

2007) (citing *Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d

570, 571 (1st Cir. 1993) ("Conceal your claims; get rid of your creditors on the cheap, and

start over with a bundle of rights.  This is a palpable fraud that the court will not tolerate,

even passively.")).

A duty to disclose a legal claim attaches to any claim that "accrues" prior to a debtor

filing for bankruptcy. *Willess v. United States,* 560 Fed. App'x 762, 764 (10th Cir. 2014)

(finding that even though the plaintiff's personal injury claim was filed after the plaintiff filed

for bankruptcy, the actual injury had occurred and therefore the claim accrued before he

filed for bankruptcy).  In the Tenth Circuit, courts determine whether a legal claim or cause

of action accrued prior to the filling for bankruptcy based on "the date of the conduct giving

rise to the claim."  *In re Parker,* 313 F.3d 1267, 1269 (10th Cir. 2002) (citing *In re Parker,*

264 B.R. 685, 696 (10th Cir. BAP 2001)).  In addition to the requirement that the conduct

occur prior to filing for bankruptcy, a claim is deemed to have accrued only if "the [debtor]

has knowledge of the facts essential to the cause of action."  *Clementson v. Countrywide*

*Fin. Corp.*, 464 Fed. App'x 706, 713 (10th Cir. 2012).

Here, the conduct giving rise to Plaintiffs' claims is Defendant MERS' Assignment

of the Deed of Trust to Defendant BNYM on March 15, 2012, which was then recorded on

March 22, 2012. *Motion* [#18] at 2-3; *Response* [#20] at 2. Specifically, Plaintiffs argue that Defendant MERS had "no right to transfer any interest" in the Deed of Trust, and thus that Defendant BNYM received no valid interest in the Deed of Trust. *Compl.* [#1] at 5-7. Plaintiffs premise this argument on the fact that Defendant MERS is the "nominee for Lender and Lender's successors and assigns" in the Deed of Trust and therefore "any claim that MERS 'assigns' the Note . . . was thus beyond MERS' authority as nominee or agent of the lender.'" *Id.* ¶ 48. Neither party here disputes that this conduct occurred prior to Plaintiffs filing a joint voluntary petition for Chapter 7 with the United States Bankruptcy Court in the District of Colorado on May 7, 2012, and that the claims in this lawsuit were not listed in Plaintiffs' petition. *Motion* [#18-1]*; Response* [#20] at 1-3.

However, Plaintiffs contend that their claims are not part of their bankruptcy estate because at the time they filed for bankruptcy, they disclosed information to "the best of their ability," but that on or about March 30, 2014, "other facts [came] to the forefront regarding the 'mortgage loan,'" which then provided Plaintiffs with knowledge of the claims in this lawsuit. *Response* [#20] at 2-3.

To prove knowledge of a cause of action, the debtor does not need to "know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that [the debtor] may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed." *In re Coastal Plains, Inc.*, 179 F.3d at 208 (quoting *Union Carbide Corp. v. Viskase Corp.* (*In re Envirodyne Indus, Inc.*), 183 B.R. 812, 821 n.17 (Bankr. N. D. Ill. 1995)); *see also Eastman*, 493 F.3d at 1157. "[A] debtor's ignorance or mistake . . . does not excuse a debtor from listing all potential causes of action in a bankruptcy petition." *Clementson*, 464 Fed. App'x

at 711 (citing *Eastman*, 493 F.3d at 1159).

Thus the question is not whether Plaintiffs had actual knowledge of their legal claim; the question is whether they had enough information to suggest potential causes of action against Defendant MERS and Defendant BNYM. The Court finds that they did. Pursuant to Colorado law "a person is deemed to have constructive notice of any instrument encumbering the title to real property once the document has been recorded in the office of the appropriate county clerk and recorder." *In re Potts*, No. 11-22624-HRT, 2013 WL 5508429, at *4 (Bankr. D. Colo. Oct. 3, 2013); *Arnove v. First Federal Sav. & Loan Ass'n of Tarpon Springs, Fla.*, 713 P. 2d 1329, 1331 (Colo. App. 1985).[7]

Thus, Plaintiffs were put on constructive notice that Defendant MERS transferred their loan to Defendant BNYM when the Assignment of Deed of Trust was properly recorded pursuant to Colorado law—the Assignment was a written document that was signed and recorded in Arapahoe County, which is where the property was situated—and Plaintiffs were parties under the same chain of title. *Compl.* [#1-2] at 3, 20. Because Plaintiffs had constructive notice of the assignments, Plaintiffs had knowledge of any potential causes of actions arising from Defendant MERS' assignment of the Deed of Trust. *See Arnove*, 713 P.2d at 1331 (holding that "it was incumbent upon the plaintiff . . . to check for any recorded encumbrances against the property"); see *also Clementson*, 464

---

[7] *See* Colo. Rev. Stat. § 38-35-106(1) (stating "Any written instrument required or permitted to be acknowledged affecting title to real property . . . after being recorded in the office of the county clerk and recorder of the county where the real property is situate, shall be notice to all persons . . . claiming an interest in said property."); *In re Taylor*, 422 B.R. 270, 273 (Bankr. D. Colo. 2009) ("Proper recording of a document provides constructive notice to all those claiming under the same chain to title."); *Franklin Bank, N.A. v. Bowling*, 74 P.3d 308, 313 (Colo. 2003) ("Constructive notice is, for all practical purposes, record notice.").

Fed. App'x at 711 (stating "a debtor's ignorance or mistake . . . does not excuse a debtor from listing all potential causes of action in a bankruptcy petition").

Therefore, Plaintiffs' claims accrued before their petition for bankruptcy. By failing to list their accrued claims, Plaintiffs lack standing to bring these claims because these claims belong to the bankruptcy estate, and only the trustee of Plaintiffs' bankruptcy estate may bring suit based on these claims.

Accordingly, the Court **recommends** that the Motion [#18] be **granted** with respect to claims against Defendant MERS and Defendant BNYM and these claims be **dismissed without prejudice**. *Brereton v. Bountiful City Corp.,* 434 F.3d 1213, 1216-17 (10th Cir. 2006) (recognizing established rule that "where the district court dismisses for lack of jurisdiction . . . the dismissal must be without prejudice" because a court without jurisdiction lacks power "to make any determination of the merits of the underlying claim").

**B.     Motion to Dismiss for Failure to State a Claim**

However, in contrast to Defendants MERS and BNYM, nothing in the pleadings indicates that Plaintiffs' claims against Defendant Shellpoint accrued prior to Plaintiffs' filing for bankruptcy, as Plaintiffs allege that Defendant Shellpoint's actions occurred after Plaintiffs were granted a discharge under Chapter 7 of the Bankruptcy Code. Nevertheless, Defendants argue that Plaintiffs have failed to state claims against Defendant Shellpoint on which relief may be granted pursuant to Rule 12(b)(6).

**1.     Claim One: Real Estate Settlement Procedures Act**

Plaintiffs allege Defendant Shellpoint violated Section 2607 of RESPA because Defendant Shellpoint allegedly "demanded and/or accepted . . . charges other than for

services actually performed." *Compl.* [# 1] ¶ 54.[8]   In response, Defendant Shellpoint contends that Plaintiffs' RESPA claim is barred by the applicable statutes of limitations and equitable tolling does not apply.  *Motion* [#18] at 7.

### a.    Statute of Limitations

Pursuant to RESPA, the statute of limitations for Section 2607(b) is one year "from the date of occurrence of the violation."  12 U.S.C. § 2614.  The "date of occurrence of the violation" has been held to "refer to the date of the closing of the loan." *Perkins v. Johnson*, 551 F. Supp. 2d 1246, 1252 (D. Colo. 2008); *Betancourt v. Countrywide Home Loans, Inc.*, 344 F. Supp. 2d 1253, 1258 (D. Colo. 2004).

Here, the date of occurrence is the date Plaintiffs' loan closed, which was August 30, 2005.  Plaintiffs did not file their claim until November 17, 2014, which is outside the statute of limitations.  *Compl.* [#1] at 7; *id.* [#1-1] at 18.  However, Plaintiffs argue that their RESPA claim should be equitably tolled.  *Response* [#20] at 4.

Although the RESPA one-year statute of limitations "may be equitably tolled," the doctrine of equitable tolling is only available in "rare and exceptional circumstances" where "a plaintiff 'diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control.'"  *Perkins*, 551 F. Supp. 2d at 1253 (quoting *Garcia v. Shanks*, 351 F.3d 468, 473, n.2 (10th Cir. 2003)); *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked

---

[8] Although Plaintiffs' allegations are not clear, it appears from the language Plaintiffs cited that they are asserting a claim pursuant to Section 2607(b) of RESPA.

by his adversary's misconduct into allowing the filing deadline to pass.  We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.").

Plaintiffs have not alleged that they exercised diligence in preserving their rights by actively pursuing any remedies for their claims, nor have they alleged rare and exceptional circumstances.  Rather, Plaintiffs argue that the statute of limitations should be tolled because Defendant Shellpoint fraudulently concealed how it serviced the loan, and Plaintiffs did not discover the concealment until they had the Audit Report conducted in June of 2014.   *Response* [#20] at 3-5.

In cases where a plaintiff alleges fraudulent concealment as a defense to statute of limitations, the Tenth Circuit has held that:

> the federal doctrine of fraudulent concealment requires the plaintiff to show "(1) the use of fraudulent means by the party who raises the ban of the statute; (2) successful concealment from the injured party; and (3) that the party claiming fraudulent concealment did not know or by the exercise of due diligence could not have known that he might have a cause of action."

*King & King Enter. v. Champlin Petroleum Co.*, 657 F.2d 1147, 1154 (10th Cir. 1981) (quoting *King & King Enter. v. Champlin Petroleum Co.*, 446 F. Supp. 906, 911 (E. D. Okla. 1978)), *cert. denied*, 454 U.S. 1164 (1982).   *See also Everplay Installation Inc., Guindon*, 471 Fed. App'x. 812, 817 (10th Cir. 2012) ("statute does not begin to run until the fraud is discovered") (citation omitted).

Plaintiffs have not alleged any facts indicating fraudulent concealment.  To the contrary, it appears from the record that in February of 2015, Plaintiffs were given notice by letter that Defendant Shellpoint, on behalf of Defendant BNYM, would be the new loan servicer servicing Plaintiffs' loan because Resurgent Mortgage Servicing, the former loan

servicer, had merged with Defendant Shellpoint. *Compl.* [# 1-2] at 57. Further, Defendant Shellpoint notified Plaintiffs on March 26, 2014, that their loan was in default. *Id.* at 30. Despite this, Plaintiffs did not begin to investigate their loan until May of 2014, and even then, almost two months after receiving their Audit Report, Plaintiffs merely sent their QWR to Defendant Shellpoint but did not put Defendant Shellpoint on notice of Plaintiffs' belief that their account was incorrect. *Compl.* [# 1-1]; *Compl.* [# 1-2] at 32. As a result, equitable tolling does not apply to bar Defendants' statute of limitations defense.

### b.   Inadequately Pled

Nevertheless, although the Court concludes that equitable tolling does not apply and thus Plaintiffs' RESPA claims are barred by statute of limitations, Plaintiffs have also failed to state a meritorious RESPA claim under Section 2605(e) or Section 2607(b).

Plaintiffs allege Defendant Shellpoint violated Section 2605(e) of RESPA because Defendant Shellpoint allegedly "refused to provide information regarding the securitization of the Plaintiffs' loan" and "provided only false 'off-balance sheet' accountings." *Response* [#20] at 4-5.[9]

Pursuant to Section 2605(e), a borrower may submit a "qualified written request . . . for information relating to the servicing of such loan" to a loan servicer. 12 U.S.C. § 2605(e)(1)(A). Upon receiving a qualified written request ("QWR"), a loan servicer must

---

[9] Plaintiffs define "securitization" as "the scheme of selling mortgage loans as securities" where "multiple loans are 'pooled' together and the payments from borrowers are paid out to investors who purchases 'shares' of the pool." *Compl.* [#1] ¶¶ 8, 26. Plaintiffs further explain that in the process of "securitization" securities are sold from a "securitized trust" that is created from the pool of loans. *Id.* ¶¶ 26-28. The "securitized trust" must "possess both loan instruments, properly endorsed, transferred and/or assigned, on or before the date that signals the start of business." *Id.* ¶ 28. Plaintiffs define "off-balance sheet accountings" as Plaintiffs' payment history that they received from Defendant Shellpoint on or about September 15, 2014. *Id.* ¶ 15.

conduct an investigation of the borrower's account and provide information regarding the servicing of the loan.  12 U.S.C. § 2605(e)(2).  If the QWR states that the account is in error, the loan servicer must investigate and make corrections to the account or explain why the account is correct.  *Id.*

It is clear based on Defendant Shellpoint's Response that it fully responded to all requests in the QWR relating to the servicing[10] of the loan.  *Compl.* [#1-2] at 38.  Plaintiffs claim that Defendant Shellpoint "refused" to provide information regarding the securitization of the loan, but nothing in the plain language of Section 2605(e) requires a loan servicer to provide information not related to its servicing of the loan, such as documents relating to the securitization of the loan.  *See Christenson v. Citimortgage, Inc.*, No. 12-cv-02600-CMA-KLM, 2014 WL 4637119, at *2 (D. Colo. Sept. 16, 2014) ("to trigger the loan-servicing QWR mandate, a borrower must file a QWR that seeks 'information relating to the **servicing** of a loan.') (citing 12 U.S.C. § 2605(e)(1)(A)) (emphasis in original).

With respect to Plaintiffs' claim that Defendant Shellpoint allegedly "demanded and/or accepted . . . charges other than for services actually performed," this too fails to state a claim of relief. *Compl.* [#1] ¶ 54.

In order to establish a violation of Section 2607(b), "a plaintiff must demonstrate that a charge for settlement services was divided between two or more persons." *Freeman v. Quicken Loans, Inc.*, --- U.S. ---, 132 S.Ct. 2034, 2044 (2012); *see also Henson v. Fidelity*

---

[10]  *See* 12 C.F.R. § 2605(i)(2) (defining a servicer as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)"). *See* 12 C.F.R. § 2605(i)(3) (defining servicing as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments . . . required pursuant to the terms of the loan").

*Nat. Financial, Inc.*, No. 1:13-CV-01452-AWI-JLT, 2014 WL 641978, at *4 (E. D. Cal. Feb. 18, 2014) ("Simply charging a fee and keeping it does not violate RESPA, even when no services are provided in connection with that charge.").[11]

Plaintiffs here do not actually allege that a charge for settlement services was divided between Defendant Shellpoint and another entity. In addition, Plaintiffs' allegation that the "off-balance sheet" is false is conclusory and unsupported with specific, factual allegations, which does not allow the Court to reasonably infer Defendant Shellpoint is liable for the RESPA allegations. *See Iqbal*, 556 U.S. at 678.

The Court therefore **recommends** that the Motion [#18] be **granted** with respect to Plaintiffs' RESPA claims against Defendant Shellpoint and the RESPA claims be **dismissed with prejudice**. *Gee v. Pacheco*, 627 F.3d 1178, 1181 (10th Cir. 2010) (affirming dismissal with prejudice of claims as barred by statute of limitations).

### 2.    Claim Two: Federal Truth-In-Lending Act

Plaintiffs allege that Defendant Shellpoint violated TILA because Defendant Shellpoint: (1) failed to "include and disclose certain charges contrary to the disclosed finance charge(s) shown on the Truth-in-Lending statement, which charges were imposed on Plaintiffs incident to the extension of credit to the Plaintiffs . . . thus resulting in an improper disclosure;" and (2) calculated "the annual percentage rate ("APR") based upon improperly calculated and disclosed amounts." *Compl.* [#1] ¶¶ 57-58. Defendant Shellpoint contends that Plaintiffs' TILA claim is barred by the applicable statute of limitations and

---

[11] *See* 12 U.S.C. § 2607(b) ( "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.")

equitable tolling does not apply.  *Motion* [#18] at 8.  Plaintiffs also argue that their complaint is a Notice of Rescission pursuant to TILA.  *Compl.* [#1] ¶ 60.                    **a    .**

### Statute of Limitations

Pursuant to 15 U.S.C. § 1640(e) of TILA, "any action under this section may be brought . . . within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  "The date of the occurrence triggering the statute of limitations is the 'date of closing' of the loan."  *Betancourt*, 344 F. Supp. 2d at 1258.[12]

It is undisputed that Plaintiffs signed and executed their loan documents on July 8, 2005 and the Promissory Note and Deed of Trust were then recorded on July 25, 2005.  *Compl.* [#1] ¶ 10; *Motion* [#18] at 2-3, 8.  The Complaint in this case was filed more than nine years later on November 17, 2014.  However, Plaintiffs argue that their TILA claim should be equitably tolled.  *Response* [#20] at 6.

Similar to the RESPA claims, equitable tolling is available for a TILA claim when a plaintiff shows that he diligently pursued his rights, but extraordinary circumstances prevented him from timely filing his claim.  *Lawrence v. Florida*, 549 U.S. 327, 336 (2007);

---

[12] *See Betancourt v. Countrywide Home Loans, Inc.*, 344 F. Supp. 2d 1253, 1258 (D. Colo. 2004).

A violation occurs . . . "when credit is extended through the consummation of the transaction between the creditor and its customer without the required disclosures being made."  *Dryden*, 630 F.2d at 646.  Consummation of the transaction occurs "at the time a contractual relationship is created between a creditor and a customer irrespective of the time of performance of either party."  *Stevens*, 497 F.2d at 310.  In *Stevens*, the contractual relationship was created when the bank contracted to extend credit.  *Id.*  In other cases, the contractual relationship has been held to occur when the borrower signed the promissory note, *Rudisell v. Fifth Third Bank*, 622 F.2d 243, 246 (6th Cir.1980); on the "date of the closing" of the loan, *Morris v. Lomas and Nettleton Co.*, 708 F. Supp. 1198, 1203 (D. Kan.1989); and on the date "when the debtors became contractually obligated on the transaction."  *In re Vickers*, 275 B.R. 401, 407 (Bankr. M.D. Fla. 2001).

*see also Heil v. Wells Fargo Bank, N.A.*, 298 Fed. App'x 703, 706 (10th Cir. 2008).

Here, Plaintiffs have not alleged that there were extraordinary circumstances that prevented them from filing this claim, nor have Plaintiffs sufficiently alleged anything indicating fraudulent concealment by Defendants. Rather, Plaintiffs assert legal conclusions and inferences without providing factual allegations.

With respect to Plaintiffs' rescission claim in particular, pursuant to 15 U.S.C. § 1635(f), "an obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of property, whichever occurs first." Thus, Plaintiffs' rescission claims are barred because this suit was filed on November 17, 2014, well beyond three years after the date of consummation of the loan, which was July 8, 2005. *Compl.* [#1] ¶ 10. *See also Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417, 419 (1998) (finding that the right to rescind under TILA is not subject to equitable tolling)*; Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1181 (10th Cir. 2012). Accordingly, the Court **recommends** that the Motion [#18] be granted with respect to Plaintiffs' rescission claim and this claim be **dismissed with prejudice**, as Plaintiffs' right of rescission expired three years after July 8, 2005 . *See Beach*, 523 U.S. at 417, 419.

### b. Inadequately Pled

Although the Court concludes that equitable tolling does not apply and thus Plaintiffs' TILA claims are barred by statute of limitations, the Court finds that Plaintiffs have also failed to state a meritorious claim under TILA.

Plaintiffs cite to 15 U.S.C. § 1601, *et seq.*, and 12 C.F.R. §§ 226.18(c)-(d), 226.22 as bases for violations of TILA. *Compl.* [# 1] ¶¶ 57-58. These regulations are inapplicable

here, however, as they all pertain to legal requirements for **creditors**, as opposed to Defendant Shellpoint, which is a **loan servicer**.  For example, 12 C.F.R. § 226.18(d) provides that a **creditor**[13] must disclose a finance charge in a transaction relating to a mortgage loan.[14]  12 C.F.R. § 226.18(d).  Similarly, 12 C.F.R. § 226.22, which sets forth how the APR is determined, only refers to "creditors" calculating the APR.  *See, e.g.*, 12 C.F.R. § 226.22(b)(2) ("Creditors may use any other computation tools . . .").  Thus, Plaintiffs have failed to state a claim under 15 U.S.C. § 1601, *et seq.  See Iqbal*, 556 U.S. at 678.

The Court therefore **recommends** that the Motion [#18] be **granted** with respect to Plaintiffs' TILA claims against Defendant Shellpoint and that these claims be **dismissed with prejudice**.  *Pacheco*, 627 F.3d at 1181 (affirming dismissal with prejudice of claims as barred by statute of limitations).

### 3.   Claim Three: Fair Credit Reporting Act

Plaintiffs allege that their FCRA claim arises from 15 U.S.C. § 1681s-2(b) because Defendant Shellpoint "wrongfully, improperly, and illegally reported negative information as

---

[13]  A creditor is defined as

. . . a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(g); *see also* 12 C.F.R. § 226.2 (a)(17).

[14]  *See* 15 U.S.C. § 1605 (a) (defining a finance charge as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit").

to the Plaintiffs to one or more Credit Reporting Agencies."[15]  *Compl.* [#1] ¶ 66.  Defendant

Shellpoint contends that Plaintiff's FCRA claim fails as a matter of law because Plaintiffs

fail to allege sufficient facts to trigger liability pursuant to FCRA; specifically, they fail to

allege that Defendant Shellpoint received notice of a dispute from a consumer reporting

agency.  *Motion* [#18] at 9; *Reply* [#22] at 4-5.

The FCRA imposes a duty on entities that provide information to consumer reporting

agencies, referred to as "furnishers," to accurately report. 15 U.S.C. § 1681 s–2(a);

*Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138 (10th Cir. 2012).  A furnisher

"shall not furnish any information relating to a consumer to any consumer reporting agency

if the person knows or has reasonable cause to believe that the information is inaccurate."

15 U.S.C. § 1681s-2(a).[16]   The FCRA defines "reasonable cause to believe that the

information is inaccurate" as "having specific knowledge, other than solely allegations by

the consumer, that would cause a reasonable person to have substantial doubts about the

accuracy of the information."  15 U.S.C. § 1681s-2(a)(1)(D).

A consumer can bring an FCRA claim against a creditor only after the creditor is

notified by a consumer reporting agency, not by the consumer, that there is a dispute about

the consumer's information.  *Sanders*, 689 F.3d at 1147; *Willis v. Capital One Corp.*, 611

Fed. App'x 500, 502 (10th Cir. 2015); *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 Fed.

---

[15]  While Plaintiffs refer to "Credit Reporting Agencies," the specific language utilized in the statute referenced is "consumer reporting agency."  *See* 15 U.S.C. § 1681s.  However, the statute appears to make no differentiation between the two terms.  *See* 15 U.S.C. § 1681a.

[16]  *See Collins v. BAC Homes Loans Servicing LP*, 912 F. Supp. 997, 1009 n. 2 (D. Colo. 2012) ("The FCRA uses the term 'furnishers of information' but does not define it. The term 'furnishers of information' is generally understood to include various types of creditors, such as banks and other lenders, that provide credit information about their customers to other entities that issue consumer reports about the customers' credit worthiness.") (citation omitted).

App'x 744, 751 (10th Cir. 2009); *see also Llewellyn v. Shearson Finacial Network, Inc.*, 622 F. Supp. 2d 1062, 1072, n.7 (D. Colo. 2009) ("the text of the statute clearly provides that the notice of a dispute that creates a duty . . . under § 1681s–2(b) is a notice that comes from a credit reporting agency, not the borrower himself").   If a consumer believes his account is inaccurate, the consumer must first file a complaint with the consumer reporting agency, who then will notify the creditor.   *See* 15 U.S.C. § 1681i(a)(2)(A); § 1681s–2(b); *Collins v. BAC Home Loans Servicing LP*, 912 F. Supp. 2d 997, 1009, 1010 (D. Colo. 2012).

Plaintiffs do not allege that they filed a complaint with any consumer reporting agency.  Plaintiffs also fail to allege any facts to show that Defendant Shellpoint received notification of a dispute from any credit reporting agency nor do they allege any facts to show that Defendant Shellpoint had "reasonable cause to believe that [Plaintiffs'] information [was] inaccurate." 15 U.S.C. § 1681s-2(a)(1)(B).  Further, Plaintiffs do not allege that Defendant Shellpoint reported information regarding Plaintiffs to any consumer reporting agency.  Hence, Plaintiffs' allegations fail to state a claim for which relief can be granted pursuant to FCRA.  *See Iqbal*, 556 U.S. at 678.

The Court therefore **recommends** that the Motion [#18] be **granted** with respect to Plaintiffs' FCRA claims against Defendant Shellpoint and that the FCRA claims be **dismissed with prejudice** for failure to state a claim.  *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (when the plaintiff is proceeding *pro se*, dismissal with prejudice is only appropriate "where it is obvious that the plaintiff cannot prevail on the facts he alleged and it would be futile to give him an opportunity to amend.").

C.     **State Law Claims**

Plaintiffs also assert state claims of (1) intentional misrepresentation, (2) unjust enrichment, (3) civil conspiracy, (4) wrongful foreclosure, (5) "cancellation of instruments," and (6) a quiet title claim.  *See Compl.* [#1].  These are claims which "[f]ederal law neither created . . . nor is federal law a necessary element of it.  [They are] purely . . . state-law claim[s]."  *Tinner v. Farmers Ins. Co.*, 504 Fed.  App'x 710, 714 (10th Cir. 2012) (citation omitted).  Here, subject-matter jurisdiction is based on federal question jurisdiction.  *See Compl.* [#1] at 1-2.   As a result, consideration of the remaining claims would require that Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  The exercise of supplemental jurisdiction "is within a district court's discretion."  *Wittner v. Banner Health*, 720 F.3d 770, 781 (10th Cir. 2013).  Pursuant to 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction."  *See Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998) (stating that once "the bases for federal subject matter jurisdiction have been extinguished . . . the district court may decline to exercise continuing pendant or supplemental jurisdiction over plaintiff's state claims").  Thus, having recommended dismissal of Plaintiffs' federal claims, the Court further **recommends** that the District Judge decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims and that such claims be **dismissed without prejudice**.  *Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir.1997) (holding that where federal claims are dismissed before trial, federal courts should decline to exercise supplemental jurisdiction over state law claims by dismissing the claim without prejudice).

## IV.  Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that the Motion [#18] be **GRANTED**.

IT IS HEREBY **ORDERED** that, pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: February 29, 2016

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge